**CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET LLP**
Kevin R. Lussier (SBN 143821)
klussier@cmlawfirm.com
Suhail Rajakumar (SBN 327595)
srajakumar@cmlawfirm.com
800 Wilshire Boulevard, 15th Floor
Los Angeles, CA 90017
213-689-8500 (phone)
213-689-8501 (fax)

**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**
Jason D. Jones (pro hac vice)
jjones@fzlz.com
Richard Z. Lehv (pro hac vice)
rlehv@fzlz.com
Courtney B. Shier (pro hac vice)
cshier@fzlz.com
151 W. 42nd Street, 17th Floor
New York, NY 10036
Tel: (212) 813-5900
Fax: (212) 813-5901

Attorneys for Defendant
SEGA CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GIOELI, | Case No. 2:25-cv-00732 RGK (MAAx) |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| SEGA CORPORATION, | |
| Defendant. | |
| | Date: May 5, 2025 |
| | Time: 9:00 a.m. |
| | Courtroom: 850, 8th Floor |
| | Judge: Hon. R. Gary Klausner |

-1-

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that on May 5, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850, 8th Floor, located at the Edward R. Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, Defendant SEGA Corporation ("SEGA") will and hereby does, present for hearing by the Court, the Honorable R. Gary Klausner presiding, this Motion to Dismiss Plaintiff John Gioeli's First Amended Complaint ("Motion").

This Motion is made on the grounds that each of the claims for relief alleged in Plaintiff's First Amended Complaint fail to state a claim upon which relief may be granted.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is based on this Notice, the Memorandum of Points and Authorities in Support of this Motion, the Declaration of Richard Z. Lehv in Support of this Motion and the exhibits attached thereto, SEGA's Request for Consideration of Documents Incorporated by Reference into the First Amended Complaint concurrently filed herewith, and the files and records in this Action, the arguments of counsel, and any other items the Court may consider.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on March 27, 2025.

DATED: April 7, 2025

        **CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET LLP**

        By: __/s/ Kevin R. Lussier__
        Kevin R. Lussier
        Suhail Rajakumar

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jason D. Jones (pro hac vice)
Richard Z. Lehv (pro hac vice)
Courtney B. Shier (pro hac vice)
**FROSS ZELNICK LEHRMAN &
ZISSU, P.C.**

Attorneys for Defendant
SEGA CORPORATION

-3-

# **TABLE OF CONTENTS**

INTRODUCTION .............................................................................................. 7

FACTUAL ALLEGATIONS OF THE FAC ...................................................... 7

I.    THE 2001 SERVICES AGREEMENT ................................................... 7

II.   THE 2001 PREMIUM PAYMENT AGREEMENT ............................. 8

III.  SEGA'S USE OF "LIVE AND LEARN" ............................................ 9

IV.   PLAINTIFF'S FIRST AMENDED COMPLAINT ............................ 9

ARGUMENT .................................................................................................... 10

I.    LEGAL STANDARD UNDER RULE 12(b)(6) ................................ 10

II.   PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF (COUNT I) SHOULD BE DISMISSED ................................................................. 10

   A.  Plaintiff's Ownership Claims Are Barred By The Statute Of Limitations ............................................... 11

      1.  The Parties' 2001 Agreements Repudiate Plaintiff's Claim ..................... 12

      2.  The Sonic Adventure 2 Game and Soundtrack Repudiate Plaintiff's Claim ................................................................. 13

   B.  Plaintiff Granted "All Rights" In The Song To Sega "In Perpetuity" ....... 14

   C.  The Sound Recording Is Not Entitled To A Separate Copyright .............. 15

III.  BECAUSE PLAINTIFF'S OWNERSHIP CLAIMS FAIL, HIS CLAIMS FOR AN ACCOUNTING (COUNT III) AND UNJUST ENRICHMENT (COUNT IV) NECESSARILY FAIL .............................................. 17

IV.   PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT II) SHOULD BE DISMISSED ................................................................. 18

   A.  The Claim For Breach Of The Services Agreement Must Be Dismissed .. 18

      1.  The Claim is Preempted by the Copyright Act .......................................... 18

      2.  The Claim is Precluded By the Terms of the Services Agreement .......... 19

      3.  The Claim is Barred by the Statute of Limitations .................................. 20

   B.  The Claim For Breach Of The Premium Agreement Must Be Dismissed ................................................................. 21

V.    LEAVE TO REPLEAD WOULD BE FUTILE ................................. 22

CONCLUSION ................................................................................................. 23

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

## Cases

*Aalmuhammed v. Lee*,
202 F.3d 1227, 1230 (9th Cir. 2000) ............................................................ 11, 12, 17

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ......................................................................................... 10

*Best Carpet Values, Inc. v. Google, LLC*,
90 F. 4th 962, 973 (9th Cir. 2024) ......................................................................... 19

*Crabtree v. Kirkman*,
22-CV-0180 (MEMF), 2023 WL 8113797 (C.D. Cal. Nov. 22, 2023) ............. 12, 13

*Ford v. Ray*,
130 F. Supp. 3d 1358 (W.D. Wash. 2015) ............................................................. 12

*Greenberg v. Riversource Life Ins. Co.*,
12-CV-0552 (WHA), 2012 WL 3257667 (N.D. Cal. Aug. 8, 2012) ....................... 21

*Kanji v. Bank of Am., N.A.*,
20-CV-3820 (RSWL)(SK), 2020 WL 8175548 (C.D. Cal. Aug. 25, 2020) ............. 22

*Kiely v. Universal Music Group*,
19-CV-4826 (MWF)(SSx), 2019 WL 9443183 (C.D. Cal. Dec. 12, 2019) ........ 18, 19

*Laws v. Sony Music Entm't, Inc.*,
448 F.3d 1134 (9th Cir. 2006) ................................................................................ 18

*Leadsinger v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) .................................................................................. 22

*Mahan v. Roc Nation, LLC*,
634 F. App'x 329 (2d Cir. Feb. 24, 2016) ............................................................... 12

*Mappa Music Co. v. Universal-Polygram Int'l Pub*,
00-CV-6593 (ABC)(AIJx), 2001 WL 1868083 (C.D. Cal. Dec. 17, 2001) ............. 21

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) .................................................................................. 14

*NBCUniversal Media, LLC v. Superior Court*,
171 Cal. Rptr. 3d 1 (Cal. Ct. App. 2014) ............................................................... 21

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

*Newton v. Diamond*,
204 F. Supp. 2d 1244 (C.D. Cal. 2002) ................................................................. 10

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013) ............................................................................... 12

*Sisseton-Wahpeton Sioux Tribe v. United States*,
90 F.3d 351 (9th Cir. 1996) ................................................................................... 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................................................... 10

*Urbont v. Sony Music Entertainment*,
831 F.3d 80 (2d Cir. 2016) ..................................................................................... 16

*Webster v. Dean Guitars*,
955 F.3d 1270 (11th Cir. 2020) ............................................................................. 11

*Whitehead v. Netflix, Inc.*,
22-CV-4049 (CRB), 2022 WL 17342606 (N.D. Cal. Nov. 30, 2022) ..................... 10

*Zuill v. Shanahan*,
80 F.3d 1366 (9th Cir. 1996) ..................................................................... 12, 13, 17

**Statutes**

17 U.S.C. § 101 ........................................................................................................ 15

17 U.S.C. § 102(a)(8) .............................................................................................. 15

17 U.S.C. § 301(a) ................................................................................................... 18

17 U.S.C. § 410(c) ................................................................................................... 11

17 U.S.C. § 507(b) ................................................................................................... 11

Cal. Code Civ. Proc. § 337(a) ................................................................................. 20

**Other Authorities**

U.S. Copyright Office,
COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) ................. 15

**Treatises**

Melville B. Nimmer & David Nimmer,
NIMMER ON COPYRIGHT (2024) ........................................................................ 17

Paul Goldstein,
GOLDSTEIN ON COPYRIGHT (3d ed. 2023) ......................................................... 16

-6-

**INTRODUCTION**

This action concerns Plaintiff's meritless claims of ownership of copyrights in a song nearly 25 years old. The song, "Live and Learn," was composed and recorded in 2001 for use in the video game *Sonic Adventure 2*—part of Defendant SEGA's successful line of video games featuring Sonic the Hedgehog. Plaintiff signed a contract with SEGA in 2001 to write lyrics for "Live and Learn" and was paid for his contribution. That contract—as well as a second contract Plaintiff also signed in 2001—states unequivocally that SEGA owns "all rights" in the song.

But now, more than two decades later, Plaintiff claims *he* owns the copyrights in "Live and Learn" and that SEGA has used it without his permission for decades in various video games. Plaintiff's First Amended Complaint (Docket Entry 17, "FAC") asserts a claim for a declaratory judgment that Plaintiff owns or co-owns the copyright in "Live and Learn," and claims for breach of contract, an accounting, and unjust enrichment. Plaintiff's claims fail to state a claim for relief because they are (i) barred by applicable statutes of limitations, (ii) precluded by the terms of contracts Plaintiff signed, and (iii) preempted by the Copyright Act. Leave to amend would be futile. Dismissal with prejudice is warranted.

**FACTUAL ALLEGATIONS OF THE FAC**

**I.    THE 2001 SERVICES AGREEMENT**

Plaintiff alleges that he wrote the lyrics for "Live and Learn" pursuant to a February 1, 2001, agreement (the "Services Agreement") with SEGA's predecessor-in-interest, SEGA of America Dreamcast, Inc. (FAC ¶¶ 4, 17-20). The Services Agreement is attached as **Exhibit A** to the Declaration of Richard Z. Lehv ("Lehv Decl."), Docket Entry ("DE") 30-1, 30-2.[1] The Services Agreement provides that

---

[1] As shown in SEGA's Request for Consideration of Documents Incorporated by Reference into the FAC filed herewith (DE 30-9), the Services Agreement (as well as the other documents listed in the Lehv Declaration) are incorporated by reference into the FAC and, thus, can be considered on this motion to dismiss.

Plaintiff (defined as "ARTIST") will "provide Services for SEGA" for the "development of a video game entitled 'SONIC ADVENTURE 2.'" (Lehv Decl., **Ex. A** at p. 7 (Whereas Clauses), DE 30-2). "Services" is defined to mean "to create lyrics for the purpose of the [*Sonic Adventure 2*] Game" and "its sequent byproducts." (*Id.* ¶¶ 1.1-1.2, p. 7).

Plaintiff alleges that "as [he] began to work with Defendant, [his] role and services began to expand." (FAC ¶ 23). Plaintiff alleges that Jun Senoue—a SEGA employee—created "demos of instrumental portions of the song" which he sent to Plaintiff "to listen to and review." (*Id.* ¶ 24). Plaintiff alleges he "came up with a revised song structure and arrangement," "recorded and performed his own vocal performance," and "produced the master recording" of the song. (*Id.* ¶¶ 25-28). Plaintiff alleges that the "fixed sound recording" was "then transmitted to the Defendant for inclusion in the Sonic Adventure 2 video game." (*Id.* ¶ 31).

The Services Agreement provides that "ARTIST agrees that *all rights* in the Services hereunder shall be owned in perpetuity by SEGA through worldwide." (Lehv Decl. **Ex. A** at p. 7 ¶ 2.3, DE 30-2) (emphasis added). It also says: "*All materials conceived or developed by ARTIST hereunder*, shall become the property of SEGA when prepared." (*Id.* ¶ 4.1, p. 8) (emphasis added).

## II.    THE 2001 PREMIUM PAYMENT AGREEMENT

The *Sonic Adventure 2* video game was released in 2001. Plaintiff concedes he was aware that "Live and Learn" was used in the game. (FAC ¶ 39). Plaintiff alleges that, on June 1, 2001, SEGA and Plaintiff entered into a "Premium Payment Agreement." (*Id.* ¶ 34, the "Premium Agreement") (Lehv Decl. **Exhibit B**, DE 30-3).

In the Premium Agreement, Plaintiff acknowledges that "certain sound recordings of music composition were provided to SEGA as works for hire by the Artist [Plaintiff]"—including "Live and Learn." (Lehv Decl. **Ex. B** at p. 13 (Whereas Clauses), DE 30-3). The Premium Agreement states that, as of June 2001, "Live and Learn" had been used in *Sonic Adventure 2* and on a CD soundtrack titled *Sonic*

*Adventure 2 Cuts Unleashed*. (*Id*. at p. 15 (Item 9)). It further states that SEGA granted a license to Nippon Columbia Co, Ltd. ("Nippon") to make the songs listed in the Premium Agreement available on its website for downloading. (*Id*. at p. 13).

SEGA and Plaintiff agreed that "although SEGA has all right, title, or interest to and from" the songs listed in the agreement—including "Live and Learn"—SEGA would nevertheless pay Plaintiff a small, specified amount for each download from Nippon's website. (*Id*.)

## III.    SEGA'S USE OF "LIVE AND LEARN"

Apart from *Sonic Adventure 2*, Plaintiff alleges that, "unbeknownst to Plaintiff," "Live and Learn" is "present in a number of other well-known video game titles"—including sequels in SEGA's Sonic video game series and video games published by Nintendo that feature (with SEGA's permission) Sonic the Hedgehog (*e.g.*, *Super Smash Bros. Ultimate*). (FAC ¶¶ 3, 40).

Plaintiff alleges he "has toured and performed ["Live and Learn"] live over the past 23 years." (*Id*. ¶ 33). He also alleges that Nintendo's *Super Smash Bros. Ultimate* is one of the "best-selling titles of all time." (*Id*. ¶ 42). Yet, somehow, Plaintiff claims he did not learn until 2024 that "Live and Learn" appears *anywhere* other than *Sonic Adventure 2*. (*Id*. ¶¶ 39, 40).

## IV.    PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's FAC asserts four counts. Count I seeks a declaratory judgment of ownership concerning the sound recording and musical composition copyrights in "Live and Learn." (FAC ¶¶ 51-54). Count II asserts that SEGA has breached the Services Agreement and the Premium Agreement. (*Id*. ¶¶ 56-60). In Count III, Plaintiff seeks an "Accounting . . . of all profits and revenues generated by 'Live and Learn'" on the grounds that he is a co-owner of the copyrights in the song and a co-owner "must account to other co-owners for any profits or revenues generated from the copyrights." (*Id*. ¶¶ 62-65). Finally, Count IV is a claim for unjust enrichment,

which merely duplicates the Accounting claim. (*Id*. ¶¶ 67-70). Each of the four Counts fails to state a plausible claim for relief.

**ARGUMENT**

## I.    LEGAL STANDARD UNDER RULE 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts "frequently employ judicial notice and the incorporation-by-reference doctrine to consider the content of materials in copyright infringement cases at the motion to dismiss stage." *Whitehead v. Netflix, Inc*., 2022 WL 17342606, at *8 (N.D. Cal. Nov. 30, 2022).

## II.    PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF (COUNT I) SHOULD BE DISMISSED

Count I seeks a declaration of ownership concerning the musical composition and sound recording copyrights in "Live and Learn." The Copyright Act distinguishes between the copyrights in a musical composition (*i.e.*, the music and lyrics of a song) and in a sound recording (*i.e.*, a particular recorded performance of the song). *See Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002).

As to the musical composition, Plaintiff seeks a declaration that he is a co-owner of the copyright with SEGA. (FAC at p. 16 (Prayer For Relief B)). As to the sound recording, Plaintiff seeks a declaration that he is the sole copyright owner. (*Id*. (Prayer For Relief A)). Although Plaintiff does not explicitly state *why* he believes he owns or co-owns those copyrights, he suggests he is a co-owner of the musical composition because he provided lyrics and allegedly "came up with a revised song

-10-

structure and arrangement." (FAC ¶¶ 24-25). He suggests he is the owner of the sound recording because he "produced the master recording" of the song "without the supervision, control, or involvement of the Defendant." (*Id*. ¶¶ 5, 28).

Plaintiff also alleges that in 2024 he registered the copyrights for "Live and Learn" with the U.S. Copyright Office. (FAC ¶ 13). However, Plaintiff's registrations do not entitle him to *any* presumption that his ownership claims are valid, since he did not apply to register his purported copyrights until 2024—more than two decades after "Live and Learn" was first published. *See* 17 U.S.C. § 410(c) (only a copyright registration made within five years after first publication of a work constitutes prima facie evidence of copyright validity); *Webster v. Dean Guitars*, 955 F.3d 1270, 1276 (11th Cir. 2020) (plaintiff registered alleged copyright 30 years after work first published; ownership claim rejected as time barred).

Count I fails for three independent reasons. *First*, Plaintiff's ownership claims accrued in 2001, and therefore are barred under the Copyright Act's three-year statute of limitations. *Second*, Plaintiff's ownership claims are barred by the language of the Services Agreement and Premium Agreement. *Third*, by Plaintiff's own admission, "Live and Learn" was recorded "for inclusion in the Sonic Adventure 2 video game." (FAC ¶ 31). Therefore, the sound recording is not a separate, copyrightable "work" subject to ownership independent of the video game itself.

## A. Plaintiff's Ownership Claims Are Barred By The Statute Of Limitations

Under the Copyright Act, the statute of limitations is three years from when a claim "accrued." 17 U.S.C. § 507(b); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230 (9th Cir. 2000). As the Ninth Circuit has made clear: "'[C]laims of co-ownership, as distinct from claims of infringement,' accrue only once, 'when plain and express repudiation of co-ownership is communicated to the claimant and are barred three years from the time of repudiation.'" *Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Zuill v. Shanahan*, 80 F.3d 1366,

1369 (9th Cir. 1996)). The same rule applies to claims of "sole ownership" of copyright. *Id*. at 1255. Moreover, "[a] statute-of-limitations defense, if apparent from the face of the complaint, may properly be raised in a motion to dismiss." *Id*.

"There is no set formula for what constitutes repudiation." *Crabtree v. Kirkman*, 2023 WL 8113797, at *7 (C.D. Cal. Nov. 22, 2023). Repudiation can be communicated by providing the claimant "with written contracts that claim sole ownership of the copyright." *Id*. Repudiation can be communicated by listing the claimant in credits with a different role than claimant now claims he played. *Aalmuhammed*, 202 F.3d at 1231 ("The movie credits plainly and expressly repudiated authorship" by listing plaintiff only as a "consultant" on the film); *Ford v. Ray*, 130 F. Supp. 3d 1358, 1361 (W.D. Wash. 2015) (repudiation occurred when album was "released to the public, [but] did not acknowledge plaintiff as an author and credited him only with lesser contributions.") Repudiation can occur when only the defendant is named in a copyright notice. *Mahan v. Roc Nation, LLC*, 634 F. App'x 329, 331 (2d Cir. 2016) (repudiation occurred where "[t]he albums, which have sold millions of copies . . . bear a copyright notice that lists [defendant] as the sole copyright owner.")

Because Plaintiff commenced this action on December 5, 2024, his ownership claims are barred if ownership was repudiated before December 5, 2021. That is clearly the case.

### 1. *The Parties' 2001 Agreements Repudiate Plaintiff's Claim*

In the Services Agreement, Plaintiff "agrees that *all rights* in the Services hereunder shall be owned in perpetuity by SEGA through worldwide" and that "*[a]ll materials conceived or developed by ARTIST hereunder*, shall become the property of Sega when prepared." (Lehv Decl., **Ex. A** at pp. 7-8 at ¶¶ 2.3, 4.1, DE 30-2) (emphasis added). The Premium Agreement provides that the sound recording of "Live and Learn" was provided to SEGA as a "work[] for hire" and that SEGA "has *all right*

*title or interest to* and from" the sound recording of "Live and Learn." (Lehv Decl., **Ex. B** at p. 13, DE 30-3) (emphasis added).

Accordingly, any claim that Plaintiff is the sole owner or co-owner of either the musical composition or sound recording copyright in "Live and Learn" was repudiated no later than 2001 by the terms of the Services Agreement and Premium Agreement. Thus, Plaintiff's declaratory judgment claim is barred by the statute of limitations. *Zuill*, 80 F.3d at 1368 (repudiation occurred when defendant stated in a written agreement that defendant "was the sole owner and copyright holder"); *Crabtree*, 2023 WL 8113797, at *4-5 (repudiation occurred when plaintiff signed written agreement stating defendant was the "owner of all rights of every kind and nature" in a comic book series and in communications with plaintiff the defendant referred to this as a "work for hire" agreement).

### 2. *The Sonic Adventure 2 Game and Soundtrack Repudiate Plaintiff's Claim*

SEGA's claim of sole ownership of the copyrights for "Live and Learn" is also confirmed by the credits and copyright notices for the *Sonic Adventure 2* video game and the *Sonic Adventure 2 Cuts Unleashed* CD soundtrack—both released in 2001.

The credits for the *Sonic Adventure 2* video game state: "Music & Lyrics: Jun Senoue, Fumie Kumatani, Kenichi Tokoi, [and] Tomoya Ohtani"—there is no mention at all of Plaintiff—and the copyright notice for the entire game (including songs) reads: "© SEGA CORPORATION 2001." (*Sonic Adventure 2*, Lehv Decl., **Exhibit C** at pp. 19, 36, DE 30-4).

On the *Sonic Adventure 2 Cuts Unleashed* CD, the credits for the "Music" and "Arrangement" of "Live and Learn"—*i.e.*, the musical composition—are solely given to "Jun Senoue." (*Cuts Unleashed* CD, Lehv Decl., **Exhibit D** at p. 48, DE 30-5). As to the sound recording, the CD says: "Sound Produced by Jun Senoue (Wavemaster Inc./Sonic Team USA)." (*Id.*). The CD further says the song was "mixed by" "the Riddle" and "tracked by "the Riddle and Hirokazu Akashi (Wavemaster Inc.)"—*not* by Plaintiff. (*Id.*) Further, the credits state the song was "tracked at" and "mixed at"

-13-

various studios in Japan and the US, including "the owl's nest" and Can-Am Recorders (*id.*)—*not* by Plaintiff at his studio in Rancho Cucamonga as he alleges. (FAC ¶ 27). And, finally, the CD bears a copyright notice solely in the names of "SONIC TEAM/SEGA." (*Cuts Unleashed* CD, Lehv Decl. **Ex. D** at p. 49, DE 30-5). The CD does not mention Plaintiff or credit him other than as having provided "Words" and "Vocals" to "Live and Learn." (*Id.* at p. 48).

Accordingly, Plaintiff's claims of copyright ownership in "Live and Learn" were repudiated as early as 2001 and, therefore, are barred by the three-year statute of limitations.

**B. Plaintiff Granted "All Rights" In The Song To Sega "In Perpetuity"**

A declaratory judgment cannot be granted when the relief sought is precluded by the terms of a written agreement. *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006). That is the case here.

Under the Services Agreement, Plaintiff "agree[d] that all rights in the Services hereunder shall be owned in perpetuity by SEGA . . . worldwide" and that "[a]ll materials conceived or developed by ARTIST hereunder, shall become the property of Sega when prepared." (Lehv Decl., **Ex. A** at pp. 7-8 at ¶¶ 2.3, 4.1, DE 30-2). Plaintiff likewise signed the Premium Agreement, in which he acknowledged that SEGA "has all right, title or interest to and from the Sound Recording" of "Live and Learn." (Lehv Decl., **Ex. B** at p. 13, DE 30-3).

Accordingly, the Services Agreement and the Premium Agreement by their very terms grant sole ownership to SEGA of both the musical composition and sound recording copyrights in "Live and Learn" and preclude Plaintiff's claim for a declaratory judgment to the contrary.

Plaintiff tries to avoid this conclusion by alleging: "In correspondence with the Defendant regarding licensing 'Live and Learn' for a SEGA Symphony, [a SEGA attorney] acknowledged that SEGA does not own any rights in 'Live and Learn.'" (FAC ¶ 46). This is blatantly false. Tellingly, Plaintiff did not attach this

-14-

"correspondence" to the FAC. In fact, this "correspondence" is a marginal comment on a draft agreement for potential performances by Plaintiff at two 2023 concerts. (Symphony Agreement, Lehv Decl., **Ex. E,** p. 51 at ¶ 1.2, DE 30-6). Neither the comment nor the draft agreement mentions "Live and Learn" or discusses licensing the song. The draft agreement merely says that Plaintiff will perform *SEGA's* songs at the concerts (*id*. ¶ 1.3), and if Plaintiff owns any songs (*id*. ¶1.2), he will not perform them without SEGA's prior written consent (*id*. ¶ 4.4, p. 53). Plaintiff also claims that SEGA's outside counsel acknowledged in a 2024 letter that "Live and Learn is a joint work between Defendant and Plaintiff." (FAC ¶ 47). But as Plaintiff admits, SEGA's outside counsel said only that the song could be a joint work "*in the absence of the [Services] Agreement*." (*Id*.) (emphasis added). In other words, SEGA's counsel made clear that, under the Services Agreement, SEGA owns "all rights" in the song and is the *sole owner* of the copyright.

## C. The Sound Recording Is Not Entitled To A Separate Copyright

Plaintiff's claim of ownership of the sound recording copyright of "Live and Learn" fails for the additional reason that the recording is not a separate, copyrightable "work" subject to ownership independent of the *Sonic Adventure 2* video game (and SEGA undisputedly owns the copyright in the video game).

The Copyright Act protects "sound recordings." 17 U.S.C. § 102(a)(7). "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, *but not including the sounds accompanying a motion picture or other audiovisual work . . . .*" 17 U.S.C. § 101 (emphasis added). Thus, a recording is not protectible as a "sound recording" if it is intended to be incorporated into an "audiovisual work." A video game is an "audiovisual work." *See* U.S. Copyright Office, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 807.1 (3d ed. 2021).

Here, Plaintiff's claim that he is the owner of the copyright in the "master recording for 'Live and Learn,'" (FAC ¶¶ 48, 51), is not plausible because, by Plaintiff's own admission, the "master recording" was transmitted to SEGA "for

-15-

inclusion in the Sonic Adventure 2 video game." (FAC ¶ 31). Moreover, the Services Agreement says the song was created "for the purpose of the Game." (Lehv Decl., **Ex. A** at p. 7 at ¶ 1.2, DE 30-2; *see also* FAC ¶ 17).

*Urbont v. Sony Music Entertainment*, 831 F.3d 80 (2d Cir. 2016), is instructive. There, the plaintiff wrote and recorded theme songs for characters in the *Marvel Super Heroes* television show, including the Iron Man character. *Id*. at 83. When plaintiff recorded the Iron Man theme song, he knew Marvel intended to include the song in the *Marvel Super Heroes* television show. *Id*. at 94. Years later, defendant (a hip hop artist) used the Iron Man theme on his new album without plaintiff's permission. *Id*. at 84. Plaintiff sued for copyright infringement, arguing that he had a "separate copyright in the sound recording of the Iron Man theme song." *Id*. at 94. The District Court dismissed the claim, holding that plaintiff's "Iron Man recording is not a 'sound recording' but rather part of an 'audiovisual work'"—and plaintiff did not own the copyright in the audiovisual work. *Id*. at 85. On appeal, plaintiff argued that he had a "separate copyright in the sound recording of the Iron Man theme song because it was recorded and fixed in a master tape prior to being incorporated into the audiovisual work [*i.e.*, the *Marvel Super Heroes* television show]." *Id*. at 94. The Second Circuit rejected this position for two reasons:

> First, at the moment of creation, when the song was recorded and embodied in a master tape, *it was intended to be a part of a larger audiovisual work* . . . . Second, while it is true that the song was recorded before it was combined with the visual portion of the work, this is true of nearly all sound tracks.

*Id.* at 94 (emphasis added).

The leading copyright treatises agree. *See* Paul Goldstein, GOLDSTEIN ON COPYRIGHT § 2.13 (3d ed. 2023) ("Even if the audio performance in issue is fixed in a master audiotape before being incorporated into the audiovisual work, it will be treated as an audiovisual work, and not as a sound recording, so long as it was intended

-16-

1   to become part of the audiovisual work."); 1 Melville B. Nimmer & David Nimmer,

2   NIMMER ON COPYRIGHT § 2.09[E][1] (2024) ("Given that the sound track constitutes

3   an integral part of the film, Congress defined 'sound recordings' to expressly exclude

4   'the sounds accompanying a motion picture or other audiovisual work'")

5        Since Plaintiff admits the "master recording" was prepared for inclusion in a

6   video game (FAC ¶ 31), the extent of Plaintiff's alleged role in the recording does not

7   matter: the "master recording" is not a separate, copyrightable "work." Therefore,

8   Plaintiff's claim for a declaratory judgement that he is the owner of copyright in the

9   sound recording must be dismissed.

10  **III.   BECAUSE PLAINTIFF'S OWNERSHIP CLAIMS FAIL, HIS CLAIMS**

11  **        FOR AN ACCOUNTING (COUNT III) AND UNJUST ENRICHMENT**

12  **        (COUNT IV) NECESSARILY FAIL**

13       Count III (Accounting) depends entirely on Plaintiff's ability to show he is the

14  copyright owner or co-owner. Since Plaintiff has no viable ownership claims, his

15  demand for an accounting necessarily fails. *Zuill*, 80 F.3d at 1369 ("The remedy

16  [plaintiffs] seek is a declaration of co-ownership, and none of the subsidiary remedies,

17  for an accounting and so forth, are independent of that remedy"); *Aalmuhammed*, 202

18  F.3d at 1235 (where declaratory judgment ownership claim was dismissed, claim for

19  an "accounting resting on co-authorship" also dismissed).

20       The same holds true for Plaintiff's Count IV (Unjust Enrichment), since it is

21  duplicative of his Accounting claim. In the unjust enrichment claim, Plaintiff claims

22  that "[a]s a result of Defendant's acts . . . that have deprived Plaintiff of his monies,

23  the Defendant has been unjustly enriched." (FAC ¶ 67). Plaintiff further alleges that

24  "Defendant has not paid to Plaintiff any share of profits, license fees, royalties, or any

25  income generated from the Plaintiff's copyrights and/or share of copyrights in the

26  master recording and/or musical composition for 'Live and Learn.'" (*Id*.) This is *word*

27  *for word* the same as Plaintiff's Accounting claim language. (*See Id.* ¶ 64). Indeed,

28

Plaintiff asserts as part of his unjust enrichment claim that "Plaintiff is entitled to an accounting and share of profits generated." (*Id*. ¶ 68).

Because the unjust enrichment claim duplicates the accounting claim and is dependent on copyright ownership (which Plaintiff cannot show), the unjust enrichment claim must be dismissed.

## IV.  PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT II) SHOULD BE DISMISSED

### A. The Claim For Breach Of The Services Agreement Must Be Dismissed

Plaintiff alleges that the Services Agreement "did not permit or contemplate uses [of "Live and Learn"] beyond the [*Sonic Adventure 2*] Game." (FAC ¶ 21). Plaintiff then alleges that SEGA, "in breach of the terms of this Agreement, utilized and licensed Plaintiff's contributions to at least 25 separate properties . . . a clear breach of the scope of the original agreement . . . ." (*Id.* ¶ 58). This claim should be dismissed for three reasons. *First*, it is preempted by the Copyright Act. *Second*, it is precluded by the terms of the Services Agreement. *Third*, it is barred by California's four-year statute of limitations on breach of contract claims.

#### 1. *The Claim is Preempted by the Copyright Act*

The Copyright Act expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a). State law claims are preempted when (1) the work at issue "falls within the subject matter of copyright," and (2) the "rights asserted under state law are equivalent to" those protected by the Copyright Act. *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006).

Here, the "subject matter" of Plaintiff's claim is a song, namely "Live and Learn." Thus, the first part of the preemption test is satisfied. *Id.* at 1139 (first part of preemption test met when the work was a song).

The second part of the preemption test is also satisfied. *Kiely v. Universal Music Group*, 2019 WL 9443183 (C.D. Cal. Dec. 12, 2019) is highly instructive. In *Kiely*,

-18-

plaintiff alleged he authored the song "A Man and a Woman" and that he entered into a contract with the band U2, under which U2 was "only to use the song on [U2's] *How to Dismantle an Atomic Bomb* album," and "could never perform the song live." *Id*. at *1, *3. Plaintiff alleged that U2 breached the contract when it performed the song live. The Court dismissed the breach of contract claim, finding it preempted by the Copyright Act. The Court, in examining the second part of the preemption test, stated: "[A] right is equivalent to rights within the exclusive province of copyright when it is infringed by the mere act of reproducing, performing, distributing, or displaying the work at issue. A claim asserted to prevent nothing more than the reproduction, performance, distribution, or display of a performance captured in a tangible medium is subsumed by copyright law and preempted." *Id*. at *3.

Here, like the plaintiff in *Kiely*, Plaintiff claims that SEGA is limited by the Services Agreement to make only one use of the song (*i.e.,* in *Sonic Adventure 2*), and that SEGA breached the Services Agreement by "utilize[ing] and licens[ing]" the song beyond *Sonic Adventure 2*. (FAC ¶ 58). Thus, the alleged breach is the reproduction and distribution of the song. Therefore, Plaintiff is "effectively assert[ing] the same rights as those protected by the Copyright Act." *Kiely*, 2019 WL 9443183, at *3. The breach of the Services Agreement claim is preempted.[2]

### 2. *The Claim is Precluded By the Terms of the Services Agreement*

Not only does the Services Agreement grant "*all rights* . . . in perpetuity" to SEGA of Plaintiff's contributions to "Live and Learn," but also, as Plaintiff admits,

---

[2] Not only is Plaintiff's unjust enrichment claim duplicative of the accounting claim (*see supra* pp. 17-18), but also it is preempted by the Copyright Act. Plaintiff claims that SEGA has been unjustly enriched because it exploited the song without paying "profits . . . generated from the Plaintiff's copyrights." (FAC ¶ 67). But the right to exploit a copyrighted work, and a co-owner's right to profits, are rights provided by the Copyright Act. "A state-law cause of action for unjust enrichment . . . should generally be regarded as an equivalent right and hence, preempted insofar as it applies to copyright subject matter." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 973 (9th Cir. 2024).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

the Services Agreement allows SEGA's use of the song in *Sonic Adventure 2* as well as in "its sequent byproducts." (FAC ¶ 19). Hence, the Services Agreement does not, as Plaintiff suggests, limit SEGA's use of the song only to *Sonic Adventure 2*. Rather, the Services Agreement expressly permits use of the song in future games.

Further, by granting "all rights" to SEGA in the Services Agreement, Plaintiff gave up any right to object to SEGA's use of the song in future works—whether they be video games, music CDs, television shows, or movies.

### 3. *The Claim is Barred by the Statute of Limitations*

The Services Agreement is governed by California law (Lehv Decl., **Ex. A** at p. 10 at ¶ 10.2, DE 30-2). California's statute of limitations for breach of contract claims is four years. CAL. CIV. PROC. CODE § 337(a).

Here, Plaintiff has known of SEGA's use of "Live and Learn" beyond *Sonic Adventure 2* since at least June 2001 when the song appeared on the *Sonic Adventure 2 Cuts Unleashed* CD soundtrack, listed in the Premium Agreement. (Lehv Decl., **Ex. B** at p. 15 (Item 9), DE 30-3). Other examples of alleged breaches are the *Sonic Mega Collection* and *Super Smash Bros. Ultimate* video games. (FAC ¶ 40). These were released in 2002 and 2018, respectively—more than four years before Plaintiff filed suit. (*Sonic Mega Collection* and *Super Smash Bros. Ultimate*, Lehv Decl., **Exhibits F & G**, DE 30-7, 30-8, pp. 59, 61).

Anticipating that his claim for breach of the Services Agreement is barred by the statute of limitations, Plaintiff tries to invoke the "discovery rule," suggesting he did not learn of *any* use of the song by SEGA beyond *Sonic Adventure 2* until 2024, when he "was made aware by a fan." (FAC ¶ 40). He says, "[u]nless Plaintiff were to actively view/play all of the above titles . . . he would not be aware of these uses and knowledge of such could not be imputed to him." (*Id*. ¶ 41). Plaintiff's excuse is not valid.

Under California law, "a cause of action for breach of contract accrues at the time of the breach of contract, and the statute of limitations begins to run at that time

-20-

regardless of . . . whether the injured party is aware of his right to sue." *Greenberg v. Riversource Life Ins. Co*., 2012 WL 3257667, at *2 (N.D. Cal. Aug. 8, 2012). *NBCUniversal Media, LLC v. Superior Court*, 171 Cal. Rptr. 3d 1 (Cal. Ct. App. 2014), is on point. *NBCUniversal* involved a claimed breach of an implied contract not to use an idea for a television program that plaintiff had pitched. The court said the breach of contract claim "accrued no later than the date when the [television] show was released to the general public." *Id*. at 8. The court rejected plaintiff's argument that accrual of the claim was delayed because plaintiff did not see the program until after the statute of limitations had run, explaining: "The mere fact that [plaintiff] did not personally view the program until sometime after the first broadcast is irrelevant, as the discovery rule does not operate to delay accrual of causes of action 'beyond the point at which their factual basis became accessible to plaintiff to the same degree as it was accessible to every other member of the public.'" *Id*. at 10-11 (citation omitted).

Here, Plaintiff's claim for a purported breach of the Services Agreement accrued when the song was first used beyond the *Sonic Adventure 2* game—which, as set out in the Premium Agreement, occurred no later than June 2001, when the song appeared on the soundtrack CD. (*See* Lehv Decl. **Ex. B** at p. 15, DE 30-3). Thus, Plaintiff's claim for breach of the Services Agreement is time barred. Nor can Plaintiff argue that a new limitations period began each time SEGA released a new work incorporating the song. That is because any claim for breach of the Services Agreement "accrued at the time of the first breach," since at that time Plaintiff "could have sued for . . . an injunction to prohibit future exploitation." *Mappa Music Co. v. Universal-Polygram Int'l Publ'g, Inc.*, 2001 WL 1868083, at *8 (C.D. Cal. Dec. 17, 2001).

**B.  The Claim For Breach Of The Premium Agreement Must Be Dismissed**

Plaintiff's claim for breach of the Premium Agreement likewise fails. Plaintiff alleges that, under the Premium Agreement, SEGA "was to pay and account to

-21-

Plaintiff for so long as Nippon distributed the 'Live and Learn' song" and that SEGA "has never accounted or paid Plaintiff." (FAC ¶ 59). This claim fails for two reasons.

*First*, a claim for monies owed (if any) under the Premium Agreement between 2001 and December 2020 is barred by California's four-year statute of limitations.

*Second*, for the period since December 2020, Plaintiff fails to plead facts sufficient to state a claim for breach. The "[f]acts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Kanji v. Bank of Am., N.A.*, 2020 WL 8175548, at *3 (C.D. Cal. Aug. 25, 2020) (quoting *Levy v. State Farm Mut. Auto. Ins. Co.*, 58 Cal. Rptr. 3d 54, 57 (Cal. Ct. App. 2007).

Here, Plaintiff does not even allege—much less provide facts sufficient to plausibly show—that (i) the Nippon website even existed at any point after December 2020, (ii) that "Live and Learn" was available for download on the Nippon website after December 2020, or (iii) that Plaintiff or any consumer downloaded the song from the Nippon website after December 2020. Thus, having failed to plead facts showing that any amounts were due him after December 2020 under the Premium Agreement, Plaintiff has failed to state a claim for breach of the Premium Agreement.

## V.   LEAVE TO REPLEAD WOULD BE FUTILE

Plaintiff cannot state a plausible claim for which relief can be granted. Among other failings, he cannot overcome his decades of delay in filing suit; he cannot change the language of the Services Agreement and Premium Agreement; and he cannot overcome the Copyright Act's preemption of his claim of breach of the Services Agreement.

Accordingly, the Court should deny leave to replead. *See, e.g.*, *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (where claims are time-barred "complaint could not be saved by any amendment"); *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (leave to amend need not be granted when it would be futile).

# CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety with prejudice.

DATED: April 7, 2025

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET LLP**

By: ___/s/ Kevin R. Lussier___
Kevin R. Lussier
Suhail Rajakumar

Jason D. Jones (pro hac vice)
Richard Z. Lehv (pro hac vice)
Courtney B. Shier (pro hac vice)
**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**

Attorneys for Defendant
SEGA CORPORATION

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant, SEGA CORPORATION, certifies that this brief contains <u>5,598</u> words, which complies with the word limit set by court order dated February 5, 2025.

DATED: April 7, 2025

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET LLP**

By: <u>  /s/ Kevin R. Lussier      </u>
Kevin R. Lussier
Suhail Rajakumar

Jason D. Jones (pro hac vice)
Richard Z. Lehv (pro hac vice)
Courtney B. Shier (pro hac vice)
**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**

Attorneys for Defendant
SEGA CORPORATION

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES