1 | RYAN W. POWERS (California State Bar No. 291784)
2 | 5807 Fayette Street
  | Los Angeles, California 90042
3 | Telephone: (323) 487-0383
  | Fax: (323) 487-0384
4 | Email: ryan@ryanpowerslaw.com
5 |
6 | Attorney for Plaintiff
  | JOHN GIOELI
7 |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| **JOHN GIOELI** | **Case No:** 2:25-cv-00732 RGK (MAAx) |
|---|---|
| Plaintiff, | **PLAINTIFF's MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| vs. | |
| **SEGA CORPORATION** | |
| Defendant. | |

1

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 5

LEGAL STANDARD ................................................................................................. 5

A. DEFENDANT'S EXHIBITS B-G MUST BE STRICKEN ............................... 6

B. DEFENDANT'S ARGUMENT OF REPUDIATION to LIMIT THE STATUTE OF LIMITATIONS FAILS .......................................................................... 7

    1. The Services Agreement was Limited to Lyric Writing Services, and Therefore Does Not Provide SEGA Other Rights and Does Not Operate as a Repudiation ................................................................................................. 7

    2. The Premium Payment Agreement Does Not Operate as Repudiation of Ownership of "Live and Learn" .................................................................... 9

    3. SEGA's Extrinsic Evidence such as the Sonic Adventure 2 Game and Soundtrack Do Not Support Repudiation and Must be Stricken ................ 13

C. BREACH OF CONTRACT OBLIGATIONS CONTINUE UNDER THE CONTINOUS ACCRUAL DOCTRINE .............................................................. 13

D. DEFENDANT's PRE-EMPTION ARGUMENT FAILS ................................ 14

E. THE SOUND RECORDING "LIVE AND LEARN" IS AN EXCLUSIVE COPYRIGHT ........................................................................................................ 14

F. THIS OPPOSITION SHOULD BE CONSIDERED IN SPITE OF ITS FILING DATE UNDER THE EXCUSABLE NEGLECT STANDARD ........................... 15

CONCLUSION .......................................................................................................... 16

# TABLE OF AUTHORITIES

Cases

*Affiliated Hospital Products*, 513 F.2d 1183, 1186 (1975) ..................................... 10

*Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258–59 (9th Cir.2010) .......... 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ............................................................. 4

*Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1101 (S.D. Cal. 2024) ................ 5

*Effects Assocs., Inc. v. Cohen* 908 F.2d 555, 557 (9th Cir.1990) ............................. 7

*Emeryville Redevelopment Agency v. Harcros Pigments, I*nc., 101 Cal. App. 4th 1083, 1101 (2002) ..................................................................................................... 9

*Gilkyson v. Disney Enterprises Inc.*, 244 Cal. App 4th 1336 at 1341 (2016) ........... 12

*Hunt v. United Bank & Trust Co.*, 210 Cal. 108, 115 (1930) .................................... 9

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 994, n.1 (N.D. Cal. 2001) ........................................................................................................ 5

*Jones Apparel Grp., Inc. v. Polo Ralph Lauren Corp.*, 791 N.Y.S.2d 409, 410 (App. Div. 2005) ............................................................................................................... 10

*Kiely v. Universal Music Group*, 2019 WL 9443183 (C.D. Cal. Dec. 12, 2019) .... 13

*Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) ................................ 4

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ................................................ 5

*Nolan v. Williamson Music, Inc.*, 300 F.Supp. 1311, 1317 (S.D.N.Y.1969), *aff'd sub. nom. Nolan v. Sam Fox Publishing Co.*, 499 F.2d 1394 (2d Cir.1974) ........ 10

*OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012) ......................... 4

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership (Pioneer)*, 507 U.S. 380, 391, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ....................................... 14

*Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993), as amended (Mar. 24, 1993) .................................................................................................................. 10

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); ........... 4

*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ............................. 4

*Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996), as amended (June 14, 1996) ............................................................................................................................... 8

**Statutes**

17 U.S.C. § 204(a) ..................................................................................................... 7

**Treatises**

17A Am. Jur. 2d Contracts § 383 (2012) .................................................................. 9

3 Nimmer § 10.15[A] at 116–18 .............................................................................. 10

# INTRODUCTION

As alleged in the complaint, Plaintiff has openly maintained his ownership claims of the master recording "Live and Learn" (and portion of the composition) for over twenty years. Plaintiff recorded the song at his home studio and had control and supervision of the creation of the master recording. Defendant was never transferred the rights to this master recording, and never plainly and expressly repudiated these rights or otherwise disputed these rights with Plaintiff. Defendant, without Plaintiff's knowledge or approval, utilized and licensed the "Live and Learn" master recording and composition in at least 25 videogame titles.

# LEGAL STANDARD

When deciding a motion to dismiss, a court must accept "all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012). Moreover, a court must "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). A complaint meets this standard when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the

contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1101 (S.D. Cal. 2024); *see also In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 994, n.1 (N.D. Cal. 2001) (taking judicial notice of merger agreement referenced in the complaint).

### A. DEFENDANT'S EXHIBITS B-G MUST BE STRICKEN

First, defendant Sega Corporation ("SEGA" or "Defendant") seeks to introduce a litany of evidence and exhibits (A-G to Declaration of Richard Lehv as attached to Defendant's Motion to Dismiss) not present or referenced in the complaint. While Exhibit A and Exhibit B are referenced in the complaint, Exhibit A is the only document where authenticity is no issue. The remaining exhibits are being shown to the Plaintiff for the first time in this motion or were otherwise sent to Plaintiff in response to this suit. As such, Plaintiff is not certain regarding their authenticity. Exhibits C-G are not referenced in the complaint nor are they central to Plaintiff's claim herein. Therefore, any consideration or inclusion of these exhibits as evidence in the present motion to dismiss is inappropriate and without legal grounds.

## B. DEFENDANT'S ARGUMENT OF REPUDIATION to LIMIT THE STATUTE OF LIMITATIONS FAILS

The facts, as stated in the complaint, are clear that the Plaintiff has openly and publicly claimed ownership of this master and song for over 20 years, including performing it and releasing the master recording on major distributors under his moniker, Crush 40. There was never a plain and express repudiation of Plaintiff's rights until this present dispute which commenced when the Plaintiff discovered (in 2024) that SEGA has licensed his song across 25 separate video games.

SEGA's own attorneys have admitted in multiple instances, in writing, that Plaintiff owns the master recording as cited in the complaint, and is at least a joint author in the composition. Complaint at 46, 47.

1. **The Services Agreement was Limited to Lyric Writing Services, and Therefore Does Not Provide SEGA Other Rights and Does Not Operate as a Repudiation**

The "Services" as defined in the February 2001 "Services Agreement" (as defined in Defendant's motion) are listed as follows "Services shall mean to create lyrics for the purpose of the Game."

In every instance, "Services" is used as a capitalized term with the definition set forth above and is unambiguously limited to lyrics created under that agreement, for which the Plaintiff is not disputing or claiming ownership. Defendants argument that "Services" could mean anything beyond its unambiguous definition in the Services Agreement is without merit.

1  The Services Agreement is limited by its own terms to the creation of lyrics. It does not include arrangement or composition of non-lyrical elements nor does it include recording a song and performing vocals on that song. The scope of the agreement, and SEGA's rights therein, are expressly limited to rights in the "Services" (i.e., the lyrics) created under that agreement.

The express language of the Services Agreement means that Defendant's arguments that it applies to the other rights or services outside the scope of the agreement fails. The Copyright Act, 17 U.S.C. § 204(a), requires a signed, written transfer of copyright to establish co-ownership or an exclusive license. *Effects Assocs., Inc. v. Cohen* 908 F.2d 555, 557 (9th Cir.1990) ("Effects II "). In Effects II, the court stated that the writing must ensure that the author "will not give away his copyright inadvertently" and "forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Id*. The writing should also serve as a guidepost for the parties to resolve their disputes: "Rather than look to the courts every time they disagree as to whether a particular use of the work violates their mutual understanding, parties need only look to the writing that sets out their respective rights." *Id*.

Therefore, any grant of rights under the Services Agreement does not establish SEGA's ownership in the master recordings, portions of the composition besides the lyrics (such as arrangement and musical compositions, and does not operate as repudiation of these same rights sought.

8

2. **The Premium Payment Agreement Does Operate as Repudiation of Ownership of "Live and Learn"**

The argument that a self-serving recital from the "Premium Agreement" in Exhibit B to the Declaration of Richard Lehv can serve as a repudiation of Plaintiff's rights is without valid basis. Claims of ownership accrue when **plain and express** repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation. *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996), as amended (June 14, 1996) (emphasis added).

Here, there was no plain and express repudiation communicated to the Plaintiff. The sole evidence provided by SEGA in this regard is the recitals of the "Premium Agreement" (as defined in Defendant's moving papers and included as Exhibit B to Richard Lehv's declaration attached thereto) which state as follows: "WHEREAS, certain sound recordings of music compositions were provided by Sega as works for hire by the Artist ("Sound Recordings", details shown in Exhibit A), for use of the video game which is known as "Sonic Adventure", "Sonic Adventure ", "Nascar" and

"WHEREAS, Sega currently has granted a license to Nippon Columbia Co., Ltd. To distribute Sound Recordings on its web sight [SIC] in forms of any existing of future invented means, and

"WHEREAS, although, Sega has all right, title or interest to and from the Sound Recordings Sega is willing to pay premium ("Premium") to Artist for his contributions ot the Sound Recordings.

"Now THEREFORE, the parties agree as follows:"

9

Notably, these recitals do not indicate that Plaintiff is agreeing with any of the terms therein, and they appear above the "Now Therefore, the parties hereto agree as follows." Further, they refer to a Schedule of Sound Recordings, some of which SEGA may have the rights to and others which are credited to other companies such as "Marvelous Entertainment, Inc." and "Victor Entertainment, Inc." As such, this does not meet the standard of a plain and express repudiation and instead seems like SEGA re-using a contract template with incorrect information.

Further, the fact that these statements are not in the body of the contract or the agreed upon terms but rather the recitals undercuts SEGA's position that it establishes any rights in and to these songs. There is no language in the Premium Agreement incorporating the recitals into the terms of the agreement itself. There is no consideration or language indicating that the Plaintiff has agreed to the terms and facts recited in the recitals. The royalty promised in the agreement is the consideration and is not dependent upon the allegations in the recitals.

"The law has long distinguished between a 'covenant' which creates legal rights and obligations, and a 'mere recital' which a party inserts for his or her own reasons into a contractual instrument. Recitals are given limited effect even as between the parties." *Emeryville Redevelopment Agency v. Harcros Pigments, I*nc., 101 Cal. App. 4th 1083, 1101 (2002). However, the "essential feature of contract is the promise, and whenever the court can collect from the instrument or engagement on the one side to do or not to do a certain thing, it amounts to a covenant, whether it be contained in the recital or in any other part of the instrument." *Hunt v. United*

10

*Bank & Trust Co.*, 210 Cal. 108, 115 (1930). "Since recitals indicate only the background of a contract, that is, the purposes and motives of the parties, they do not ordinarily form any part of the real agreement." 17A Am. Jur. 2d Contracts § 383 (2012), *See Jones Apparel Grp., Inc. v. Polo Ralph Lauren Corp.*, 791 N.Y.S.2d 409, 410 (App. Div. 2005) ("Since the contract is unambiguous on its face, there is no need to refer to its recitals, which are not part of the operative agreement.").

There is no assignment of these rights to SEGA under the Premium Agreement as required by the copyright act, just as there is no evidence that Plaintiff agreed to the terms of the recitals, or that Defendant themselves ever honored their contractual obligations (royalties to Plaintiff) under this Premium Agreement. In fact, Plaintiff was first provided a copy of this Agreement in the months leading up to this litigation as it appears neither party was aware of its existence until the present claim caused SEGA to review their records and find this document of questionably authenticity.

Even if the Premium Agreement recitals were somehow enforceable, SEGA's failure to ever pay any consideration or royalties constitutes a total breach of that agreement for which Plaintiff would be entitled to remedy of rescission. A breach will justify rescission of a licensing agreement only when it is "of so material and substantial a nature that [it] affect[s] the very essence of the contract and serve[s] to defeat the object of the parties.... [The breach must constitute] a total failure in the performance of the contract." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993), as amended (Mar. 24, 1993), *citing Affiliated Hospital*

11

*Products*, 513 F.2d 1183, 1186 (1975); *Nolan v. Williamson Music, Inc.*, 300 F.Supp. 1311, 1317 (S.D.N.Y.1969), *aff'd sub. nom. Nolan v. Sam Fox Publishing Co.*, 499 F.2d 1394 (2d Cir.1974); 3 Nimmer § 10.15[A] at 116–18.

Defendant further intends to mislead the court by misstating the language of the Premium Agreement in their motion with the allegation that "SEGA and Plaintiff agreed" to the terms of the recital purportedly establishing SEGA's right, title, and interest in the Live and Learn master and composition when there is no language in the agreement stating that the Plaintiff ever agreed to the terms stated in the recital.

In summary, what SEGA is presenting as a plain and express repudiation is anything but. It is unclear from this Premium Agreement what songs SEGA would be repudiating ownership in. The allegations are only included outside the terms of the contract itself and in an unenforceable recital from an agreement that is likely subject to rescission given SEGA's total breach and failure to ever pay Plaintiff anything. Finally, it would seem neither party was aware of this Premium Agreement until SEGA conducted research after the receipt of Plaintiff's complaint and subsequently provided to the Plaintiff immediately preceding this lawsuit.

Given these deficiencies and the nature of this Premium Agreement, the Premium Agreement is clearly not a "plain and express" repudiation of ownership. Meanwhile, Plaintiff has actively and openly claimed ownership of the master recording and SEGA's own counsel has admitted such ownership in writing.

The Services Agreement was specifically limited to the creation of lyrics and did not include the recording services or anything related to the master recording

12

itself. As such, it could not operate to repudiate rights in materials that were outside the scope of the contract itself, nor could it plainly and expressly repudiate such rights.

### 3. SEGA's Extrinsic Evidence such as the Sonic Adventure 2 Game and Soundtrack Do Not Support Repudiation and Must be Stricken

Defendant SEGA attempts to introduce a litany of exhibits not included or referenced in the Complaint, namely various credits for their video game Sonic Adventure 2 and a Soundtrack CD. As discussed above, because these documents are not referenced in any way in the complaint and we dispute their authenticity subject to further investigation, they cannot be allowed as evidence in support of the 12(b)6 motion.

### C. BREACH OF CONTRACT OBLIGATIONS CONTINUE UNDER THE CONTINOUS ACCRUAL DOCTRINE

In Gilkyson v. Disney Enterprises Inc., the court explains that in a music royalty case where obligations to pay royalties are ongoing, the statute of limitations does not bar breach of contract claims that have accrued during the last four year period. *Gilkyson v. Disney Enterprises Inc.*, 244 Cal. App 4th 1336 at 1341 (2016).

Here, the "Premium Agreement" (as defined in Defendant's moving papers) carried an ongoing obligation to account and pay royalties to the Plaintiff. As stated in the complaint, "Defendant was to pay and account to Plaintiff for so long as Nippon Columbia distributed the "Live and Learn" song."

We have alleged that Plaintiff was never paid, including not being paid in the past four years. Therefore, Defendant remains liable for damages that fall within this period and this claim should not be dismissed.

### D. DEFENDANT's PRE-EMPTION ARGUMENT FAILS

Defendant's reliance on an unpublished case for the proposition that music royalty contracts are unenforceable due to copyright pre-emption is misplaced. That case was ruled on other grounds such as the plaintiff failing to file within the statute of limitations and certainly does not stand for the proposition that limitations in any contract dealing with music rights are not enforceable simply due to pre-emption. See *Kiely v. Universal Music Group*, 2019 WL 9443183 (C.D. Cal. Dec. 12, 2019)

### E. THE SOUND RECORDING "LIVE AND LEARN" IS AN EXCLUSIVE COPYRIGHT

Defendant claims that the inclusion of the "Live and Learn" master recording in the Sonic Adventure 2 video game is sufficient to strip it of separate copyright status under the copyright act. This is an incorrect interpretation of the terms of the Copyright Act. The mere inclusion of a song into a movie or video game does not render the copyright in the underlying master void. Section 102(a)(7) does not operate to strip the sound recordings rights from any song that ends up in a film, but rather to prevent the sound portion of a film from holding its own sound recording copyright. The cases cited by Defendant are illustrative of this difference, in every instance the recordings were made specifically for characters and themes within the show for the purposes of accompanying and being part of the audiovisual work itself. Here, "Live and Learn" was not recorded to accompany any piece of

14

audiovisual media or video game but rather as a standalone musical work that was placed into the game. Here, as in many other cases, the song was delivered and licensed for use in the video game and maintained its own separate copyright, for which it has been separately distributed, performed, and exploited for over 20 years.

The Services Agreement for lyrics is the only portion of the composition that indicated it was created especially for the video game, again, for which Plaintiff is not disputing the ownership of.

### F. THIS OPPOSITION SHOULD BE CONSIDERED IN SPITE OF ITS FILING DATE UNDER THE EXCUSABLE NEGLECT STANDARD

"This rule ... '[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.' " *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258–59 (9th Cir.2010)

Courts have recognized that the excusable neglect standard in Rule 6(b) extends to inadvertent delays. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership (Pioneer)*, 507 U.S. 380, 391, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). To determine whether a party's failure to meet a deadline constitutes "excusable neglect", the Court considers four factors: 1) the danger of prejudice to the opposing party; 2) the length of the delay and its potential impact on the proceedings; 3) the reason for the delay, including whether it was in the reasonable control of the movant; and 4) whether the movant acted in good faith. *Id*.

Here, four factors support the consideration of this opposition in that the opposition is being filed only a day after the deadline set forth in local rule and will have no impact on the scheduling of the proceedings or prejudice to the Defendant.

The reason for delay was a simple calendaring error whereby the deadline was not saved to the calendar and the filing date was inadvertently missed. Immediately upon discovery, the filing was completed and made the following day.

As such, the Plaintiff requests that this opposition be considered in spite of its filing date in connection with the pending motion to dismiss pursuant to the excusable neglect doctrine.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully request the Court denies Defendants' motion to dismiss in its entirety, or in the alternative, grant Plaintiff leave to amend.

DATED: April 16, 2025     **RYAN W. POWERS, ESQ.**

By  /Ryan W. Powers/

Ryan W. Powers

**RYAN W. POWERS ESQ**
Ryan W. Powers (SBN 291784)
5807 Fayette Street
Los Angeles, CA 90042
Telephone: (323) 487-0383
Email: ryan@ryanpowerslaw.com

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, Johnny Gioeli, certifies that this brief contains 3,021 words, which complies with the word limit set by court standing order dated May 2023.

DATED: April 16, 2025

**RYAN W. POWERS, ESQ.**

By  /Ryan W. Powers/

Ryan W. Powers

**RYAN W. POWERS ESQ**
Ryan W. Powers (SBN 291784)
5807 Fayette Street
Los Angeles, CA 90042
Telephone:  (323) 487-0383
Email: ryan@ryanpowerslaw.com