**CRUSER, MITCHELL, NOVITZ,**
**SANCHEZ, GASTON & ZIMET LLP**
Kevin R. Lussier (SBN 143821)
klussier@cmlawfirm.com
Suhail Rajakumar (SBN 327595)
srajakumar@cmlawfirm.com
800 Wilshire Boulevard, 15th Floor
Los Angeles, CA  90017
213-689-8500 (phone)
213-689-8501 (fax)

**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**
Jason D. Jones (pro hac vice)
jjones@fzlz.com
Richard Z. Lehv (pro hac vice)
rlehv@fzlz.com
Courtney B. Shier (pro hac vice)
cshier@fzlz.com
151 W. 42nd Street, 17th Floor
New York, NY 10036
Tel: (212) 813-5900
Fax: (212) 813-5901

Attorneys for Defendant
SEGA CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GIOELI, | Case No. 2:25-cv-00732 RGK (MAAx) |
| Plaintiff, | |
| v. | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| SEGA CORPORATION, | |
| Defendant. | Date:  May 5, 2025 |
| | Time:  9:00 a.m. |
| | Courtroom: 850, 8th Floor |
| | Judge: Hon. R. Gary Klausner |

-1-
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... 3

INTRODUCTION ................................................................................................... 5

ARGUMENT ........................................................................................................... 5

    I.    THE DECLARATORY RELIEF CLAIM SHOULD BE DISMISSED .. 5

        A.    The Claims Are Time-Barred ............................................................ 5

            1.    The Services Agreement Repudiates Plaintiff's Claim ............ 6

            2.    The Premium Agreement Repudiates Plaintiff's Claim ........... 7

            3.    The Sonic Adventure 2 Game and Soundtrack Repudiate Plaintiff's Claim ....................................................... 9

        B.    Plaintiff Granted "All Rights" In The Song To Sega ..................... 10

        C.    The Sound Recording Is Not Entitled To A Separate Copyright ... 11

    II.    THE ACCOUNTING AND UNJUST ENRICHMENT CLAIMS FAIL ........................................................................................ 12

    III.    THE BREACH OF CONTRACT CLAIMS MUST BE DISMISSED .................................................................. 12

        A.    The Claim for Breach Of The Services Agreement Must Be Dismissed ........................................................................ 12

        B.    The Claim for Breach Of The Premium Agreement Must Be Dismissed ........................................................................ 14

    IV.    LEAVE TO REPLEAD WOULD BE FUTILE .................................... 14

CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*,
    592 F. Supp. 2d 1208 (N.D. Cal. 2008) .................................................................. 10

*Al-Bustani v. Alger*,
    2023 WL 1778814 (W.D. Wash. Feb. 6, 2023) ............................................... 7, 10

*Crabtree v. Kirkman*,
    2023 WL 8113797 (C.D. Cal. Nov. 22, 2023) ........................................................ 8

*Dominguez v. Fed. Ins. Co.*,
    2021 WL 6882212 (C.D. Cal. Oct. 8, 2021) ............................................................ 7

*Effects Assocs., Inc. v. Cohen*,
    908 F.2d 555 (9th Cir. 1990) ................................................................................... 6

*Holak v. Kmart Corp.*,
    2012 WL 6202298 (E.D. Cal. Dec. 12, 2012) .................................................. 7, 10

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................................... 14

*Kiely v. Universal Music Group*,
    2019 WL 9443183 (C.D. Cal. Dec. 12, 2019) ...................................................... 13

*La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*,
    2019 WL 4934178 (S.D. Cal. Oct. 7, 2019) .......................................................... 10

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*,
    733 F.3d 1251 (9th Cir. 2013) ................................................................................. 5

*Shorter v. L.A. Unified Sch. Dist.*,
    2013 WL 6331204 (C.D. Cal. Dec. 4, 2013) .......................................................... 6

*Sonoma Cnty. Ass'n of Retired Emp. v. Sonoma County*,
    2010 WL 11484767 (N.D. Cal. Nov. 23, 2010) ..................................................... 8

*Taylor v. Universal Music Corp.*,
    2013 WL 12136369 (C.D. Cal. Mar. 19, 2013) .................................................... 13

*Transamerica Life Ins. Co. v. Ponso*,
   2020 WL 6875181 (C.D. Cal. Nov. 18, 2020) ...................................................... 14

*Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*,
   495 F. Supp. 3d 848 (C.D. Cal. 2020) ............................................................ 6, 13

*Urbont v. Sony Music Entertainment*,
   831 F.3d 80 (2d Cir. 2016) ................................................................................ 11

*Zhu v Li*,
   2025 WL 80361 (9th Cir. Jan. 13, 2025) ............................................................ 8

*Zuill v. Shanahan*,
   80 F.3d 1366 (9th Cir. 1996) .............................................................................. 8

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# INTRODUCTION

Plaintiff offers no meaningful response to SEGA's Motion to Dismiss the FAC ("Motion") (DE 30).[1] Instead, Plaintiff's Opposition ("Opp") (DE 37) concedes many of SEGA's key arguments, makes factual assertions that are demonstrably false, proposes legal principles that are flatly wrong, and desperately tries to prevent the Court from looking at documents that Plaintiff himself references and quotes in his FAC—because he knows those documents sound the death knell for his claims. In the end, the FAC and the documents incorporated by reference therein undeniably show that Plaintiff granted all rights in "Live and Learn" to SEGA twenty-four years ago, in 2001, and any notion that he had any copyright ownership in the song was expressly repudiated by SEGA in 2001. Plaintiff's FAC should be dismissed with prejudice.

# ARGUMENT

## I. THE DECLARATORY RELIEF CLAIM SHOULD BE DISMISSED

Count I seeks a declaration that Plaintiff owns or co-owns the musical composition and sound recording copyrights in "Live and Learn." (FAC ¶¶ 51-54).

### A. The Claims Are Time-Barred

SEGA's Motion showed that Plaintiff's ownership claims accrued in 2001, and therefore are barred under the Copyright Act's three-year statute of limitations. (Motion at 11-14). Plaintiff concedes that copyright ownership claims, "as distinct from claims of infringement, accrue only once, when plain and express repudiation of co-ownership is communicated to the claimant and are barred three years from the time of repudiation." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013); (Opp. at 9). Plaintiff also does not dispute that "repudiation" can include (i) providing a plaintiff with written contracts in which defendant claims sole copyright ownership, (ii) listing the plaintiff in credits with a different role than he now claims he played, and (iii) naming only the defendant in a

---

[1] Capitalized terms and abbreviations herein have the meanings in SEGA's Motion.

copyright notice. (Motion at 12, collecting cases).

### 1. *The Services Agreement Repudiates Plaintiff's Claim*

In 2001, the Services Agreement repudiated any ownership by Plaintiff in the copyright of "Live and Learn". (Motion at 12-13). In the Services Agreement, Plaintiff agreed that "*all rights* in the Services hereunder shall be owned in perpetuity by SEGA" (¶ 2.3) and that "*[a]ll materials conceived or developed by ARTIST hereunder*, shall become the property of Sega when prepared" (¶ 4.1). (Lehv Decl., **Ex. A** at pp. 7-8 at ¶¶ 2.3, 4.1, DE 30-2) (emphases added). Plaintiff's Opposition focuses only on Section 2.3—arguing that the definition of "Services" is "limited to lyrics . . . for which Plaintiff is not disputing or claiming ownership"[2] (Opp. at 7), and supposedly "does not include arrangement of or composition of non-lyrical elements." (*Id*. at 8).

But Plaintiff ignores Section 4.1, which says: "*All materials* conceived or developed by ARTIST hereunder, shall become the property of Sega when prepared." (Lehv Decl., **Ex. A** at p. 8 at ¶ 4.1, DE 30-2) (emphasis added). This is broad enough to include any non-lyrical contributions, including melody, arrangement, and recording. Plaintiff fails to respond to SEGA's argument that the language in Section 4.1 is a "plain and express repudiation." By not responding to the argument, Plaintiff concedes it. *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 495 F. Supp. 3d 848, 854 (C.D. Cal. 2020) ("Arguments to which no response is supplied are deemed conceded."); *Shorter v. L.A. Unified Sch. Dist.*, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013) (collecting cases on concession of arguments by non-opposition).

Plaintiff argues that a transfer of copyright "requires a signed, written transfer," and suggests the language in the Services Agreement does not constitute a transfer to SEGA of any copyright. (Opp. at 8, citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990)). But *Effects Associates* makes clear that no special wording is

---

[2] Plaintiff is thus jettisoning the fraudulent copyright application he filed in 2024 in which he claimed to be sole owner of the song, including the lyrics. (FAC ¶ 13).

necessary to transfer a copyright. 908 F.2d at 557. The wording in the Services Agreement is clearly sufficient: "All materials conceived or developed by ARTIST hereunder shall become the property of Sega when prepared." (Lehv Decl., **Ex. A** at p. 8 at ¶ 4.1, DE 30-2).

### 2. *The Premium Agreement Repudiates Plaintiff's Claim*

The Premium Agreement, which Plaintiff signed, states that "Sega has all right, title or interest to and from the Sound Recordings," which expressly includes the recording of "Live and Learn." (Lehv Decl., **Ex. B** at p. 13, p. 15 (Item 9), DE 30-3). As SEGA showed, this is a further repudiation of any ownership by Plaintiff in the sound recording copyright. (Motion at 12-13). Plaintiff makes several arguments to try to avoid this unambiguous repudiation, but each one fails.

*First*, Plaintiff claims the Court should not even look at the Premium Agreement—saying he is "not certain regarding [its] authenticity." (Opp. at 6, 11.) This half-hearted, unsupported statement is ineffective. Plaintiff was required to provide "evidence to dispute in good faith the authenticity of" the agreement—which he has not done. *Holak v. Kmart Corp.*, 2012 WL 6202298, at *5 (E.D. Cal. Dec. 12, 2012) (court considered exhibit submitted with defendant's motion to dismiss over plaintiff's unsupported authenticity objection); *Al-Bustani v. Alger*, 2023 WL 1778814, at *3 (W.D. Wash. Feb. 6, 2023) (dispute of authenticity must have "facial plausibility"). Moreover, Plaintiff in fact has no good faith basis to dispute the agreement's authenticity. It bears Plaintiff's signature, he alleges in the FAC that "SEGA Corporation entered into [the] agreement with Plaintiff," and he even asserts a claim that SEGA breached the Premium Agreement. (FAC ¶¶ 34, 59). Plaintiff cannot allege he entered into the agreement, sue for its alleged breach, and then question its authenticity. *See, e.g.*, *Dominguez v. Fed. Ins. Co.*, 2021 WL 6882212, at *2 (C.D. Cal. Oct. 8, 2021) (Klausner, J.) (court considered contract submitted with defendant's motion to dismiss under the incorporation by reference doctrine where complaint included a claim for breach of the contract).

*Second*, Plaintiff makes the absurd claim that he was "first provided a copy of this [Premium] Agreement in the months leading up to this litigation." (Opp. at 11; *see* FAC ¶ 34). But obviously he was provided with a copy of the agreement when he signed it in 2001. That he forgot about it proves SEGA's point: his claim of copyright ownership is stale. *Third*, Plaintiff argues that "these recitals" in the Premium Agreement "do not indicate that Plaintiff is agreeing with any of the terms therein." (Opp. at 10). This argument is both false and nonsensical. Plaintiff signed the Premium Agreement and thus has no basis to claim he did not agree to its terms. Moreover, a repudiation can trigger the limitations period even if the plaintiff does not agree with the repudiation. In *Zuill v. Shanahan*, the "plain and express repudiation" of copyright ownership by the defendant was set forth in an agreement that the plaintiff "refused to sign." 80 F.3d 1366, 1368 (9th Cir. 1996). In *Crabtree v. Kirkman*, the defendant's statement that "he *believed* [the plaintiff] had signed a 'work made for hire' contract" constituted express repudiation—even though plaintiff disagreed with defendant's "belief." 2023 WL 8113797, at *8-9 (C.D. Cal. Nov. 22, 2023) (emphasis added).

*Fourth*, Plaintiff argues that the statement that SEGA owns "all right, title or interest to" the "Live and Learn" song is "not in the body of the [Premium Agreement] or the agreed upon terms" but in the "recitals," *i.e.*, the "whereas" clauses. (Opp. at 10). But, again, there is no requirement that a plaintiff *agree* with a defendant's repudiation. Moreover, Plaintiff's attempt to ignore the factual recitals in the Premium Agreement fails. "Under California Evidence Code Section 622, '[t]he facts recited in a written instrument are conclusively presumed to be true as between the parties thereto.'" *Zhu v Li*, 2025 WL 80361, at *1 (9th Cir. Jan. 13, 2025); *see also Sonoma Cnty. Ass'n of Retired Emp. v. Sonoma County*, 2010 WL 11484767, at *4 (N.D. Cal. Nov. 23, 2010) ("A whereas clause . . . is an acknowledgment of something that has occurred in the past or is occurring in the present.")

*Fifth*, Plaintiff argues that the recitals "refer to a Schedule of Sound Recordings, some of which SEGA may have the rights to and others which are credited to other companies," including Marvelous Entertainment. (Opp. at 10). Plaintiff says it "seems like SEGA [is] re-using a contract template with incorrect information." But there is no "incorrect information." Marvelous Entertainment is the manufacturer of the "SONIC ADVENTURE 2 Cuts Unleashed" album. (Lehv Decl., **Ex. D** at p. 49, DE 30-5).

*Sixth*, Plaintiff argues that the Premium Agreement does not include an "assignment" of any rights. (Opp. at 11). But that is not necessary, since Plaintiff granted "all rights" to SEGA in the earlier Services Agreement. Moreover, the issue is whether the Premium Agreement includes an express *repudiation* of ownership by Plaintiff, which it surely does, when it says: "SEGA has all right, title or interest to and from the Sound Recordings," including "Live and Learn."

*Finally*, Plaintiff argues that SEGA's alleged failure to pay royalties is a breach of the Premium Agreement and grounds for "rescission." (Opp. at 11). But again, Plaintiff misses the point. Attempting to rescind the Premium Agreement in 2025 would not change the fact that in 2001 he signed the agreement, which contained an express repudiation and started the limitations period.

### 3. The Sonic Adventure 2 Game and Soundtrack Repudiate Plaintiff's Claim

SEGA showed that the repudiation of any copyright ownership by Plaintiff is further confirmed by the credits and copyright notices for the *Sonic Adventure 2* video game and the *Sonic Adventure 2 Cuts Unleashed* CD soundtrack—both released in 2001. (Motion at 13-14). For example, on the *Sonic Adventure 2 Cuts Unleashed* CD, the credits for "Music" and "Arrangement" of "Live and Learn"—*i.e.*, the musical composition—are solely given to "Jun Senoue." (Lehv Decl., **Exhibit D** at p. 48, DE 30-5). As for who produced the sound recording, the CD says: "Sound Produced by Jun Senoue (Wavemaster Inc./Sonic Team USA)," *not* Plaintiff. (*Id.*)

Plaintiff knows these credits repudiate Plaintiff's claim of copyright ownership, and he is unable to offer an argument that these credits are *not* a repudiation. (*See* Opp. at 13). Instead, he argues that the Court is prohibited from even looking at the video game and the CD soundtrack. (*Id.*) He first makes the wildly false claim that these two items "are not referenced in any way in the complaint." (Opp. at 13). In fact, the *Sonic Adventure 2* game is referenced *by name* at least *eight times* in the FAC. (FAC ¶¶ 2, 4, 17-21, 31, 39, 40, 57). As for the *Cuts Unleashed* CD, it is explicitly listed as one of the "Sound Recordings" in the Premium Agreement (Lehv Decl., **Ex. B** at p. 15 (Item 9), DE 30-3). Plaintiff repeatedly references the Premium Agreement in the FAC and even asserts a claim for breach of that agreement. (FAC ¶¶ 34, 45, 59).

Plaintiff next asserts that he "disputes [the] authenticity" of the video game and CD. (Opp. at 13). But he offers no evidence or good faith, plausible basis to dispute the authenticity of the video game and CD, which anyone can purchase. *Holak,* 2012 WL 6202298, at *5; *Al-Bustani*, 2023 WL 1778814, at *3. Further, both items are self-authenticating under Fed. R. Evid. 902(7), since they bear the SEGA name and logo, indicating their origin. *See, e.g.*, *ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, 592 F. Supp. 2d 1208, 1219 (N.D. Cal. 2008); *La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, 2019 WL 4934178, at *11 (S.D. Cal. Oct. 7, 2019).

### B. Plaintiff Granted "All Rights" In The Song To Sega

SEGA's Motion showed why the Services Agreement and the Premium Agreement by their very terms grant sole ownership to SEGA and preclude Plaintiff's claim for a declaratory judgment. (Motion at 14-15).

Plaintiff seems to respond to this point with the failed arguments in his "Statute of Limitations" section (Opp. at 7-8), discussed above. Plaintiff's only other response to this argument is to say, "SEGA's own attorneys have admitted in multiple instances, in writing, that Plaintiff owns the master recording as cited in the complaint and is at least a joint author in the composition." (Opp. at 7). Plaintiff does not identify any such "admissions," merely citing two paragraphs in the FAC. (*Id.*, citing FAC ¶¶ 46-

47). SEGA's Motion showed why the allegations in FAC ¶¶ 46 and 47 are false and SEGA even provided a copy of the "correspondence" quoted in ¶ 46 to confirm it does not say what Plaintiff claims. (Motion at 14-15; Lehv Dec. **Ex. E**, DE 30-6).

Plaintiff has no response, so he again tries to stop the Court from looking at this "correspondence" (a draft agreement), saying, without explanation or evidence, that he is "not certain regarding [its] authenticity." (Opp. at 6). Then, he makes two blatantly false claims. First, he says the draft agreement is "being shown to [him] for the first time" with SEGA's Motion. (*Id.*) This is false because he quotes from it in his FAC; it came from his own files. Second, he claims the draft agreement—which, again, *he quoted in paragraph 46 of the FAC*—is "not referenced in the complaint." (Opp. at 6). These false statements border on sanctionable conduct.

### C. The Sound Recording Is Not Entitled To A Separate Copyright

SEGA showed that Plaintiff's claim of ownership of the sound recording also fails because the recording is not a separate, copyrightable "work" subject to ownership independent of the *Sonic Adventure 2* video game. (Motion at 15-17). SEGA's Motion cited the U.S. Copyright Compendium, case law (*Urbont v. Sony Music Entertainment*, 831 F.3d 80 (2d Cir. 2016)), and leading treatises. (*Id.*)

In response, Plaintiff says that in the cases SEGA cited, "the recordings were made specifically for characters and themes within the show for the purposes of accompanying and being part of the audiovisual work itself." (Opp. at 14). Plaintiff then claims that "'Live and Learn' was not recorded to accompany any piece of audiovisual media or video game but rather as a standalone musical work that was placed into the game." (*Id*. at 14-15). But the FAC itself proves this statement false. The FAC admits Plaintiff entered into the Services Agreement "whereby Plaintiff was to contribute some lyrics to an as yet untitled song *for a video game called 'Sonic Adventure 2'* (the 'Game')." (FAC ¶ 17) (emphasis added). Further, the "Services" under the agreement "were to 'create lyrics *for purposes of the Game*.'" (*Id*. ¶ 18) (emphasis added). The FAC goes on to admit that the recording of "Live and Learn"

-11-

was "transmitted to [SEGA] *for inclusion in the Sonic Adventure 2 video game.*" (*Id.* ¶ 31) (emphasis added). Nowhere does the FAC allege that "Live and Learn" was created "as a standalone musical work." (Opp. at 15). Rather, it alleges the exact opposite—namely, that the song was created "for inclusion in the *Sonic Adventure 2* video game." (FAC ¶ 31). Since Plaintiff admits the "master recording" was prepared for inclusion in a video game, the "master recording" is not a separate, copyrightable "work" and his claim to own the copyright in the sound recording must be dismissed.

## II.     THE ACCOUNTING AND UNJUST ENRICHMENT CLAIMS FAIL

As SEGA showed, Count III (Accounting) and Count IV (Unjust Enrichment) depend entirely on Plaintiff's ability to show he is the copyright owner or co-owner. (Motion at 17-18). And since Plaintiff has no viable ownership claims, Plaintiff's claims for an accounting and unjust enrichment necessarily fail. (*Id.*) Plaintiff does not respond to this argument and, thus, he has conceded that Counts III and IV must be dismissed if Count I is dismissed.

## III.    THE BREACH OF CONTRACT CLAIMS MUST BE DISMISSED

### A. The Claim for Breach Of The Services Agreement Must Be Dismissed

SEGA showed that Plaintiff's claim for breach of the Services Agreement is (1) preempted by the Copyright Act; (2) precluded by the terms of the Services Agreement; and (3) barred by California's four-year statute of limitations. (Motion at 18-21). Plaintiff does not respond to grounds (2) and (3), so we start with those.

<u>*Statute of Limitations*</u>. Under California law, the statute of limitations for breach of contract is four years. As SEGA showed, Plaintiff has known of SEGA's use of "Live and Learn" beyond the *Sonic Adventure 2* game since at least June 2001, when the song appeared on the *Sonic Adventure 2 Cuts Unleashed* CD soundtrack, listed in the Premium Agreement. (Motion at 20-21). SEGA further explained that under California law, a cause of action for breach of contract accrues at the time of the breach, and the statute begins to run regardless of whether the plaintiff is aware of the breach. (*Id.* at 20-21). And SEGA demonstrated that Plaintiff cannot argue that a

new limitations period began each time SEGA released a new work incorporating the song, since any claim for breach of the Services Agreement accrued at the time of the first breach. (*Id*. at 21). Plaintiff does not respond to *any* of these arguments, thus conceding them. *Travelers Cas. Ins.*, 495 F. Supp. 3d at 854.

<u>*Claim Precluded By The Services Agreement*</u>. As SEGA explained, the Services Agreement does not limit SEGA's use of the song only to *Sonic Adventure 2*. (Motion at 19-20). Rather, the Services Agreement allows SEGA's use of the song in *Sonic Adventure 2* as well as in "its sequent byproducts" and thus expressly permits use in future games. (*Id*.) Further, by granting "all rights" to SEGA in the Services Agreement, Plaintiff gave up any right to object to SEGA's use of the song in future video games, music CDs, television shows, or movies. (*Id*. at 20). Again, Plaintiff does not respond to these arguments, thus conceding them.

<u>*Claim Preempted by Copyright Act*</u>. Plaintiff devotes only a single paragraph to SEGA's preemption argument. (Opp. at 14; Motion at 18-19). He first tries to distinguish the on-point decision in *Kiely v. Universal Music Group*, 2019 WL 9443183 (C.D. Cal. Dec. 12, 2019), by making the erroneous argument that the case was *not* about preemption. He argues that the "case was ruled on other grounds such as the plaintiff failing to file within the statute of limitations." (Opp. at 14). In fact, *Kiely* says: "[T]he Court dismisses Plaintiff's breach of contract claim because it is preempted by the Copyright Act." 2019 WL 9443183, at *3. The Court dismissed *other claims*, namely the plaintiff's copyright ownership claims, as time-barred. *Id.* at *6. Plaintiff also implies that *Kiely* is an outlier—pejoratively referring to it as "an unpublished case." (Opp. at 14). *Kiely* is not an outlier. Indeed, this Court has dismissed a breach of contract claim as preempted by the Copyright Act where the contract claim was "ultimately based on an alleged promise not to use [plaintiff's] creative works without compensating Plaintiffs." *Taylor v. Universal Music Corp.*, 2013 WL 12136369, at *2 (C.D. Cal. Mar. 19, 2013) (Klausner, J.) Plaintiff also claims that a "music royalty contract" cannot be preempted. (Opp. at 14). But the Services

-13-

Agreement does not provide for any royalty payment and is not a "music royalty contract"—so this is a strawman argument. Plaintiff's claim is preempted.

### B. The Claim for Breach Of The Premium Agreement Must Be Dismissed

Finally, SEGA's Motion showed that Plaintiff's claim for breach of the Premium Agreement fails because (1) a claim for monies owed under the Premium Agreement between 2001 and December 2020 is barred by California's four-year statute of limitations and (2) for the period since December 2020, Plaintiff failed to plead facts sufficient to state a claim for breach. (Motion at 21-22).

Plaintiff concedes that any claim for breach of the Premium Agreement based on failure to pay monies owed prior to December 2020 is time-barred. (Opp. at 13-14). As for the period since December 2020, he ignores entirely SEGA's argument that he has not even alleged that, after December 2020, (i) the Nippon website even existed, (ii) "Live and Learn" was available on the website, or (iii) Plaintiff or any consumer downloaded the song. (Motion at 22). Thus, he concedes he has failed to state a claim for breach of the Premium Agreement occurring after December 2020.

## IV. LEAVE TO REPLEAD WOULD BE FUTILE

Plaintiff, who has already amended once, concludes his Opposition with a one-sentence request that the Court "grant Plaintiff leave to amend" if it grants SEGA's Motion. (Opp. at 16). This is insufficient. A plaintiff requesting leave to amend must "state what additional facts they would plead if given leave to amend," so the Court can determine whether such amendment would be futile. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1052 (9th Cir. 2008); *see also Transamerica Life Ins. Co. v. Ponso*, 2020 WL 6875181, at *6 (C.D. Cal. Nov. 18, 2020) (denying leave to amend where plaintiff provided a "one-sentence request for leave to amend that d[id] not identify facts [she] could allege to save her counterclaims").

### CONCLUSION

The FAC should be dismissed in its entirety with prejudice.

| | | |
|---|---|---|
| 1 | DATED: April 21, 2025 | **CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET LLP** |

By:*/s/Kevin R. Lussier*
Kevin R. Lussier
Suhail Rajakumar

Jason D. Jones (pro hac vice)
Richard Z. Lehv (pro hac vice)
Courtney B. Shier (pro hac vice)
**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**

Attorneys for Defendant
SEGA CORPORATION

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, SEGA CORPORATION, certifies that this brief contains 3,537 words, which complies with the word limit set by court order dated February 5, 2025.

DATED: April 21, 2025           **CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET LLP**

By:<u>*/s/Kevin R. Lussier*</u>
Kevin R. Lussier
Suhail Rajakumar

Jason D. Jones (pro hac vice)
Richard Z. Lehv (pro hac vice)
Courtney B. Shier (pro hac vice)
**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**

Attorneys for Defendant
SEGA CORPORATION