# EXHIBIT A

# SERVICE AGREEMENT

This Agreement is entered into as of the First day of February, 2001, by and between SEGA OF AMERICA DREAMCAST, INC., a California corporation having its principal offices at Townsend Center, 650 Townsend Street, Suite 650, San Francisco, CA 94103, U.S.A.("SEGA"), and Johnny Gioeli, whose residence is at 5210 Gallo Ct., Rancho Cucamonga, CA 91739. ("ARTIST").

WHEREAS, SEGA is currently engaged in the development of a video game entitled "SONIC ADVENTURE 2" (as defined in the Subsection 1 of this Agreement "Game");

WHEREAS, the ARTIST is able to provide lyrics for the purpose of the Game (as defined in the Subsection 1 of this Agreement "Services");

WHEREAS, the ARTIST has represented that he is fully qualified to provide Services for SEGA in relation to the above, and SEGA is willing to contract ARTIST for providing such Services, on the terms and conditions hereinafter set forth.

NOW, THEREFORE, the parties hereto agree as follows:

## 1    DEFINITION

1.1    "Game" shall mean video game for any format tentatively known as SONIC ADVENTURE 2 by the parties and its sequent byproducts.

1.2    "Services" shall mean to create lyrics for the purpose of the Game.

1.3    "Service Fee" shall mean consideration to be paid for services the payment made by SEGA to ARTIST on the condition and terms of this Agreement.

## 2    SERVICES

2.1    ARTIST shall provide following Services.

(a)    ARTIST shall make arrangements so that SEGA is able to use such lyrics for the purpose of this Agreement.

(b)    ARTIST shall perform, by himself, under SEGA's direction.

2.2    Except as expressly, provided herein, it is expressly agreed and acknowledged between the parties hereto that ARTIST shall not be a legal representative, agent, joint venturer, partner, or employee of SEGA for any purpose whatsoever; and that ARTIST shall not have any right or authority to assume or create any obligation of any kind or to make any representation or warranty on behalf of SEGA, whether express or implied, or to bind SEGA in any respect or manner whatsoever.

2.3    ARTIST agrees that all rights in the Services hereunder shall be owned by SEGA in perpetuity through worldwide.  Further ARTIST agrees that all rights in the Services are utilized in any advertising or promotions relating to the Game in any and all media and formats, without payment of any compensation other than Service Fee.

Exhibit A-6

## 3   SERVICE FEE; PAYMENT

In consideration for ARTIST's providing Services hereunder, SEGA shall make a payment of Three thousand dollars ($3,000.00), which shall be payable upon completion of the Services.

## 4   OWNERSHIP

4.1   All materials conceived or developed by ARTIST hereunder, shall become the property of Sega when prepared, whether delivered to Sega or not, and shall together with any materials furnished ARTIST by Sega hereunder, be delivered to Sega upon request, and in any event, upon termination of this Agreement.

4.2   If requested by Sega, ARTIST agrees to do all things necessary, at Sega's sole cost and expense, to obtain patents or copyrights of any processes, products, or writing conceived and/or developed or produced by ARTIST in the performance of services under this Agreement.   ARTIST further agrees to execute such documents as may be necessary to implement and carry out the provisions of this paragraph.

## 5   TERM

This Agreement shall be effective from Feb. 1, 2001 through the date of completion of the Services to be performed by ARTIST, which shall be completed no later than Feb. 28, 2001.

## 6   TERMINATION

6.1   If ARTIST defaults in the performance of any provision of this Agreement, SEGA may give written notice of such default to ARTIST.   If any such default is not cured within thirty (30) days after delivery of such notice, then SEGA may, at its option, elect to terminate this Agreement at the expiration of such thirty (30) day period by providing written notice of such election to ARTIST.

6.2   This Agreement may be terminated immediately by SEGA in the event that:

(a)   an order for relief in any bankruptcy or reorganization proceeding is entered against ARTIST and such order remains undischarged for a period of sixty (60) days; or

(b)   a receiver is appointed for ARTIST; or ARTIST is dissolved or liquidated or ceases to carry on his business; or

(c)   ARTIST is insolvent or otherwise is unable to pay his debts; or

(d)   ARTIST attempts to assign this Agreement in contravention hereof; or

(e)   ARTIST's status, as determined at SEGA's reasonable and sole discretion, becomes such that ARTIST is not able to adequately perform his obligations hereunder, including, without limitation, death, injury or disease.

6.3   In the event this Agreement is terminated by SEGA in accordance with the provisions of this Section 5, SEGA shall not be liable to ARTIST for any compensation, reimbursement, or damages of any kind as a result thereof, other than as expressly set forth herein.   The termination or cancellation of this Agreement

Exhibit A-7

shall not, however, relieve either party of any obligations or liabilities incurred prior to the effective date of such termination.

## 7     REPRESENTATIONS AND WARRANTIES.

ARTIST represents and warrants solely for the benefit of SEGA that:

7.1    ARTIST has the right, power and authority to enter into this Agreement and to fully perform his obligations hereunder.

7.2    The making of this Agreement by ARTIST does not violate any separate agreement, rights or obligations existing between ARTIST and any other person or entity, and throughout the term of this Agreement, ARTIST shall not make any separate agreement with any person or entity that is inconsistent with any of the provisions of this Agreement.

7.3    ARTIST's policies and practices with respect to the performance of this Agreement shall in no manner reflect adversely upon the name, reputation or goodwill of SEGA.

## 8     INDEMNITIES; ASSUMPTION OF RISK.

ARTIST agrees to indemnify and hold SEGA, and at SEGA's option defend SEGA, from and against any and all claims, losses, liabilities, damages, expenses and costs, including, without limitation, reasonable fees for attorneys and court costs, which result from a breach or alleged breach of any of the warranties expressly set forth in Section 6, above, or incurred in the settlement or avoidance of any such claim; provided, however, that SEGA shall give prompt written notice to ARTIST of the assertion of any such claim, and provided further that ARTIST shall have the right to select counsel and control the defense and/or settlement thereof, subject to the right of SEGA to participate in any such action or proceeding at its own expense with counsel of its own choosing. SEGA shall not agree to the settlement of any such claim, action or proceeding without ARTIST's prior written consent.

## 9     CONFIDENTIAL INFORMATION.

9.1    ARTIST acknowledges and agrees that certain information that ARTIST may receive from SEGA shall be deemed to be confidential information and subject to restrictions on disclosure and use as set forth below. "Confidential Information" means: (i) the fact that SEGA is developing or intends to develop any particular hardware, software or other product; (ii) any and all of technical information provided by SEGA; (iii) any non-public information concerning the business or finances of SEGA; and (iv) any other information provided by SEGA which is designated in writing by SEGA prior to disclosure as being proprietary to SEGA.

9.2    ARTIST agrees that it shall maintain the confidentiality of the Confidential Information and safeguard the confidential and/or business sensitive information which it may receive from SEGA with the same degree of care used to protect its own information of a like nature and/or in accordance with the provisions of any separate non-disclosure agreement applicable to such information. ARTIST further agrees that it shall not use for its own account apart from this Agreement or for the account of any third party, nor disclose or otherwise disseminate to any third party, any company trade secret or other such confidential information

Exhibit A-8

of or concerning SEGA unless the written consent of the other party shall first have been obtained.

9.3   ARTIST shall use its reasonable best efforts by contract, instruction or otherwise to ensure that its employees, agents and contractors comply with such party's obligations under this Section 8, and to ensure that no Confidential Information shall be disclosed or made available to any such officers, directors, employees, agents or contractors of the ARTIST unless such persons or third parties have a need to know such information for purposes of the performance of this Agreement.

9.4   ARTIST acknowledges that SEGA considers its Confidential Information to contain trade secrets of SEGA and that any unauthorized copying, use, or disclosure of such information would cause SEGA immediate, irreparable and irremediable harm for which its remedies at law will be inadequate. Accordingly, ARTIST acknowledges and agrees that SEGA shall be entitled, in addition to any other remedies available to it at law or in equity, to the issuance without bond of ex parte injunctive relief enjoining any breach or threatened breach of the ARTIST's obligations hereunder with respect to the Confidential Information, and such further relief as any court of competent jurisdiction may deem just and proper.

9.5   Upon expiration or termination of this Agreement, ARTIST shall promptly return to SEGA any and all documents and related materials of or concerning the trade secrets and/or confidential information which originated with the other party and which remains in the ARTIST's custody or under its control, or, if requested by the SEGA, shall destroy all such trade secret and/or confidential information and certify to the destruction of all such documents and related materials.

## 10   GENERAL PROVISIONS

10.1   <u>ASSIGNMENT</u>.  SEGA has entered into this Agreement upon the basis of the particular capabilities and experience of ARTIST and its officers, directors and employees. Accordingly, ARTIST may not assign this Agreement or any of its rights hereunder, nor delegate or otherwise transfer any of its obligations hereunder, to any third party unless the prior written consent of SEGA shall first be obtained. Any attempted or purported assignment, delegation or other such transfer without the required consent of SEGA shall be void and a material breach of this Agreement. Subject to the foregoing, this Agreement shall insure to the benefit of the parties and their respective successors and permitted assigns.

10.2   <u>GOVERNING LAW AND JURISDICTION</u>.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of California, excluding that body of law related to choice of laws, and of the United States of America. Any dispute or proceeding brought to enforce the terms of this Agreement or to adjustificate any dispute arising hereunder shall be brought in the courts of the Country of SanMateo, State of California (if there is no jurisdiction in federal court) or the Northern District of California, at San Francisco. Each of the parties hereby submits itself to the exclusive jurisdiction and venue of such courts for purposes of any such action and agrees that any service of process may be affected by delivery of the summons in the manner provided in the delivery of notice.

10.3   <u>LEGAL COSTS AND EXPENSES</u>.  In the event it is necessary for either party to retain the services of an attorney or attorneys to enforce the terms of this Agreement or to file an action to enforce any of the terms, conditions or rights contained herein, or to defend any action, then the prevailing party in any such action shall be entitled to recover from the other party its reasonable fees for attorneys and expert witnesses, plus such court costs and expenses as may be fixed by any court of competent jurisdiction.

10.4   <u>LIMITATION OF LIABILITY</u>.  Neither party shall be liable to the other party for any incidental, consequential, special, or punitive damages arising out of this Agreement or its termination, or the breach of any of its provisions, whether for breach of warranty or any obligation arising therefrom or otherwise,

whether liability is asserted in contract or tort (including negligence and strict product liability), and irrespective of whether the parties have advised or been advised of the possibility of any such loss or damage.

10.5 REMEDIES.   Unless expressly set forth to the contrary, either party's election of any remedies provided for in this Agreement shall not be exclusive of any other remedies available hereunder or otherwise at law or in equity, and all such remedies shall be deemed to be cumulative.

10.6 SECTIONS SURVIVING EXPIRATION OR TERMINATION.   The following sections and subsections shall survive the expiration or earlier termination of this Agreement for any reason:  7; 8; 9; 10; and 11.

10.7 WAIVER.   No failure or delay by either party in exercising any right, power, or remedy under this Agreement shall operate as a waiver of any such right, power, or remedy.   No waiver of any provision of this Agreement shall be effective unless in writing and signed by the party against whom such waiver is sought to be enforced.   Any waiver by either party of any provision of this Agreement shall not be construed as a waiver of any other provision of this Agreement, nor shall such waiver operate as or be construed as a waiver of such provision respecting any future event or circumstance.

10.8 MODIFICATION.   No modification of any provision of this Agreement shall be effective unless in writing and signed by both of the parties.

10.9 HEADINGS.   The section headings used in this Agreement are intended for convenience of reference only and shall not by themselves determine the construction or interpretation of this Agreement or any portion hereof.

10.10 INTEGRATION.   This Agreement (together with the Exhibits attached hereto) constitutes the entire agreement between SEGA and ARTIST and supersedes all prior or contemporaneous agreements, proposals, understandings, and communications between SEGA and ARTIST, whether oral or written, with respect to the subject matter hereof.

10.11 COUNTERPARTS.   All signed copies of this document shall be deemed to be originals of this Agreement.

10.12 CONSTRUCTION.   This Agreement shall be fairly interpreted in accordance with its terms and without any strict construction in favor of or against either of the parties.

IN WITNESS WHEREOF, the parties have caused this Licensing Agreement to be duly executed as of the day and year first written above.

SEGA: Sega Of America Dreamcast, Inc.                    ARTIST: Johnny Gioeli

By: _____            By: _____   6/1/01

Name: Yukio Aoyama                            Name: Johnny Gioeli

Title:   CFO                                    Title:   Lyricist

Exhibit A-10